DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Joseph R. Phillips, appeals from his conviction of aggravated vehicular assault in the Medina County Court of Common Pleas. We affirm.
 I. {¶ 2} On the afternoon of July 14, 2005, Crystal Lancaster was driving to work, heading west on Sleepy Hollow Road in Medina. When she reached the intersection of Sleepy Hollow and Pearl Road, she stopped at a red traffic light. After the light turned green, Ms. Lancaster started into the intersection. Almost immediately, she saw a black vehicle out of the corner of her eye that appeared to be speeding directly toward her. Ms. Lancaster attempted to avoid a collision by accelerating, but she was struck by the other vehicle, driven by Appellant. Ms. Lancaster's vehicle was a total loss and she suffered physical injuries in the collision. Her physical injuries included a broken tooth that could not be repaired, a fracture of the orbit bone that penetrated the sinus cavity, and she continued to suffer from frequent headaches, blurred vision, dizziness, and tingling and numbness in her face.
 {¶ 3} Just prior to the collision, several witnesses saw Appellant heading north on Pearl Road, driving in the center lane at a high rate of speed. He drove past several vehicles in the regular lane of travel and narrowly missed hitting one of them as the driver prepared to enter the center lane to make a left turn. Witnesses had observed Appellant drive through several red traffic lights on Pearl Road, including at the intersection of Sleepy Hollow, where the collision occurred.
 {¶ 4} After striking Lancaster's vehicle, Appellant lost control of his own vehicle and crashed through a store front, but no one was injured inside the building. Appellant sustained minor physical injuries and his vehicle was damaged. Because Appellant appeared to be intoxicated and smelled of alcohol at the scene, a state trooper administered field sobriety tests. Appellant performed poorly on the field sobriety tests and a breathalyzer test confirmed that Appellant had a blood alcohol concentration over the legal limit. A blood test at the hospital also confirmed that Appellant had alcohol and marijuana in his blood stream.
 {¶ 5} Appellant was charged with aggravated vehicular assault and was convicted following a jury trial. Appellant appeals and raises two assignments of error.
 II. First Assignment of Error "APPELLANT'S AGGRAVATED VEHICULAR ASSAULT CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} Appellant contends that his conviction of aggravated vehicular assault was against the manifest weight of the evidence. When reviewing a challenge that a verdict is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 7} Appellant was convicted of aggravated vehicular assault pursuant to R.C. 2903.08(A)(1)(a),[1] which required the State to prove that, while operating a motor vehicle, he caused serious physical harm to another person as a proximate result of driving under the influence of alcohol. Appellant contends that the evidence failed to establish that he was intoxicated or otherwise driving under the influence, that he caused Ms. Lancaster's injuries, or that Ms. Lancaster suffered serious physical harm.
 {¶ 8} The State established through the testimony of several witnesses that, at the time of the collision, Appellant was intoxicated, he was driving at a high rate of speed down the center lane of Pearl Road, and that he ran through a red traffic light just before he collided with Ms. Lancaster's vehicle in the intersection.
 {¶ 9} Appellant was observed by witnesses at the scene immediately after the collision. Witnesses testified that Appellant was pacing and agitated, that he seemed to be more concerned about his own fate than that of the other driver, and that Appellant appeared to be intoxicated. The state trooper who responded to the scene testified that Appellant smelled of alcohol and he performed poorly on every field sobriety test that she administered. A breathalyzer test confirmed that Appellant had a blood alcohol concentration over the legal limit. A blood test at the hospital also confirmed the presence of alcohol and marijuana in Appellant's blood.
 {¶ 10} The State also established that Appellant's impaired driving was the cause of the accident and Ms. Lancaster's injuries. Several witnesses had observed Appellant driving down Pearl Road just before the collision. These witnesses testified that Appellant was driving at an excessive rate of speed and was traveling in the center lane to pass other vehicles on the road. One witness testified that, shortly before the collision, she was driving north on Pearl Road, a few blocks away from the collision scene. She stopped to make a left turn, but happened to look in her mirror and saw Appellant's vehicle coming from behind on the left, so she did not proceed into the center turn lane. Appellant passed her and continued down the center lane of Pearl Road. This witness further explained that Appellant was traveling at a high rate of speed and she remembered being concerned that he was going to hurt someone.
 {¶ 11} Another witness testified that Appellant drove past him at another point on Pearl Road shortly before the collision. He explained that Appellant created a cloud of dust as he drove down the center lane. That witness, who was stopped at a red traffic light at a different intersection, saw Appellant drive through that traffic light as well as one red traffic light after another until he disappeared from sight.
 {¶ 12} Ms. Lancaster testified that she was stopped at a red light on Sleepy Hollow and did not proceed into the intersection at Pearl Road until the light turned green. Another witness, who was driving in the vehicle directly behind Ms. Lancaster, corroborated Ms. Lancaster's testimony that the light was green when Lancaster proceeded into the intersection. That same witness testified that, moments after Ms. Lancaster proceeded into the intersection, another car "came from out of nowhere and just plowed right into her."
 {¶ 13} Aside from statements that Appellant made at the scene, denying that he was intoxicated or that he had been the cause of the collision, there was no evidence before the jury to contradict the overwhelming evidence presented by the State that Appellant was intoxicated and that his impaired driving was the cause of the collision and Ms. Lancaster's injuries.
 {¶ 14} Appellant also maintains that the State failed to prove that Ms. Lancaster suffered serious physical harm as a result of the automobile collision. "Serious physical harm to persons" is defined in R.C. 2901.01(A)(5) to include:
 "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 15} There was ample evidence before the jury from which it could reasonably conclude that Ms. Lancaster sustained serious physical harm in the collision. The witness who had been driving behind Ms. Lancaster just before the collision sat with Ms. Lancaster until the paramedics arrived. She described Ms. Lancaster as being very upset, her face was extremely swollen and bruised and she was in pain.
 {¶ 16} Ms. Lancaster was taken to the hospital by ambulance. Although she was treated and released from the hospital and the swelling and bruising eventually subsided, the pain and other symptoms did not. It was not discovered until she returned to the hospital a few days later that she had also sustained an orbital fracture, a fracture to the eye socket bone, which penetrated her sinus cavity. It has been held that facial bruising and swelling and an orbital fracture are sufficient injuries to take the issue of serious physical harm to the jury. SeeState v. McCleod (Dec. 12, 2001), 7th Dist. No. 00 JE 8. See, alsoState v. Dorsey, 9th Dist. No. 87580, 2006-Ohio-5918, at ¶ 33.
 {¶ 17} The collision also caused Ms. Lancaster to break a permanent tooth, and the tooth could not be repaired. Ms. Lancaster explained that her dentist was waiting for the root of the tooth to die so that the tooth could be extracted and replaced with an implant. It has been held that the loss of a permanent tooth, in and of itself, constitutes serious physical harm. See State v. Davis, (May 24, 1984), 8th Dist. No. 47622, at *1.
 {¶ 18} Moreover, at the time of the trial, which was eight months after the collision, Ms. Lancaster was still experiencing headaches that were so severe that she sometimes missed work. The headaches were often accompanied by blurred vision, dizziness, and numbness and tingling in her face. It was unclear whether these symptoms would ever subside. Ms. Lancaster testified that one of her doctors suggested that these symptoms may have been caused by nerve damage.
 {¶ 19} Given the evidence presented at trial, the jury did not lose its way in finding that Appellant was guilty of aggravated vehicular assault. The first assignment of error is overruled.
 Second Assignment of Error "DEFENDANT'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 20} Appellant contends that he received ineffective assistance of trial counsel. The Sixth Amendment to the United States Constitution
guarantees a criminal defendant the effective assistance of counsel.McMann v. Richardson (1970), 397 U.S. 759, 771. Courts employ a two-step process to determine whether the right to effective assistance of counsel has been violated:
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984), 466 U.S. 668, 687.
 {¶ 21} To demonstrate prejudice, Appellant must establish that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
 {¶ 22} An attorney properly licensed in Ohio is presumed competent.State v. Lott (1990), 51 Ohio St.3d 160, 174. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy. State v. Smith (1985), 17 Ohio St.3d 98, 100. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." State v. DeNardis (Dec. 29, 1993), 9th Dist. No. 2245, at *2, citing Strickland, 466 U.S. at 690.
 {¶ 23} Appellant contends that the performance of his trial counsel was deficient because he failed to move for acquittal, failed to raise any objections during trial, and failed to call any witnesses on behalf of the defense. Counsel's failure to move for acquittal did not prejudice Appellant because, as explained in the discussion of the first assignment of error, the state presented ample evidence to support the jury's verdict.
 {¶ 24} The other alleged errors of counsel, counsel's failure to object or call witnesses, likewise fail to support a claim of ineffective assistance of counsel. Appellant does not explain what objections his trial counsel should have raised or what witnesses he should have called, much less how these omissions prejudiced him in any way.
 {¶ 25} The State had a strong case against Appellant and he has failed to demonstrate that there was anything that his trial counsel could have done to change the results of the trial. The second assignment of error is overruled.
 III. {¶ 26} Appellant's two assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
SLABY, P. J. MOORE, J. CONCUR.
[1] Although the parties seem to believe that Phillips was also convicted pursuant to R.C. 2903.08(A)(2), a felony of a lesser degree, he was not indicted under that section, nor does the judgment of conviction make any reference to R.C. 2903.08(A)(2).